**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | CLASS ACTION |
| WILDHORSE RESOURCE DEVELOPMENT CORPORATION, ANTHONY BAHR, BRIAN A. BERNASEK, JONATHAN M. CLARKSON, SCOTT GIESELMAN, JAY C. GRAHAM, DAVID W. HAYES, STEPHANIE C. HILDEBRANDT, GRANT E. SIMS, MARTIN W. SUMNER, TONY R. WEBER, CHESAPEAKE ENERGY CORPORATION, and COLEBURN INC., | ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This action stems from a proposed transaction announced on October 30, 2018 (the "Proposed Transaction"), pursuant to which WildHorse Resource Development Corporation ("WildHorse" or the "Company") will be acquired by Chesapeake Energy Corporation ("Parent") and Coleburn Inc. ("Merger Sub," and together with Parent, "Chesapeake Energy").

2.       On October 29, 2018, WildHorse's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger with Chesapeake Energy (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, WildHorse's

stockholders will receive either 5.989 shares of Parent common stock or 5.336 shares of Parent common stock and $3.00 in cash for each share of WildHorse they own.

3.      On December 26, 2018, defendants filed a proxy statement/prospectus (the "Prospectus") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Prospectus, which scheduled a stockholder vote on the Proposed Transaction for January 31, 2019, omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Prospectus.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of WildHorse common stock.

9.      Defendant WildHorse is a Delaware corporation and maintains its principal executive offices at 9805 Katy Freeway, Suite 400, Houston, Texas 77024.  WildHorse's common stock is traded on the NYSE under the ticker symbol "WRD."  WildHorse is a party to the Merger Agreement.

10.     Defendant Anthony Bahr is President and a director of the Company.

11.     Defendant Brian A. Bernasek is a director of the Company.

12.     Defendant Jonathan M. Clarkson is a director of the Company.

13.     Defendant Scott Gieselman is a director of the Company.

14.     Defendant Jay C. Graham is Chief Executive Officer and Chairman of the Board of the Company.

15.     Defendant David W. Hayes is a director of the Company.

16.     Defendant Stephanie C. Hildebrandt is a director of the Company.

17.     Defendant Grant E. Sims is a director of the Company.

18.     Defendant Martin W. Sumner is a director of the Company.

19.     Defendant Tony R. Weber is a director of the Company.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.     Defendant Parent is an Oklahoma corporation and a party to the Merger Agreement.

22.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of WildHorse (the "Class").  Excluded from the Class are defendants herein and any

person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of October 26, 2018, there were approximately 101,996,339 shares of WildHorse common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

# SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30.     WildHorse is an independent oil and natural gas company focused on the acquisition, exploration, development, and production of oil, natural gas, and NGL properties primarily in the Eagle Ford Shale and Austin Chalk in East Texas.

31.     On October 29, 2018, WildHorse's Board caused the Company to enter into the Merger Agreement with Chesapeake Energy.

32.     Pursuant to the terms of the Merger Agreement, WildHorse's stockholders will receive either 5.989 shares of Parent common stock or 5.336 shares of Parent common stock and $3.00 in cash for each share of WildHorse they own.

33.     According to the press release announcing the Proposed Transaction:

Chesapeake Energy Corporation (NYSE:CHK) and WildHorse Resource Development Corporation (NYSE:WRD) today jointly announced that Chesapeake has entered into a definitive agreement to acquire WildHorse, an oil and gas company with operations in the Eagle Ford Shale and Austin Chalk formations in southeast Texas, in a transaction valued at approximately $3.977 billion, based on yesterday's closing price, including the value of WildHorse's net debt of $930 million as of June 30, 2018. At the election of each WildHorse common shareholder, the consideration will consist of either 5.989 shares of Chesapeake common stock or a combination of 5.336 shares of Chesapeake common stock and $3 in cash, in exchange for each share of WildHorse common stock. The transaction was unanimously approved by the Board of Directors of each company.

The acquisition of WildHorse expands Chesapeake's oil growth platform and accelerates progress toward its strategic and financial goals of enhancing margins, achieving sustainable free cash flow generation, and reducing net debt to EBITDA ratio. . . .

Upon closing, Chesapeake shareholders will own approximately 55% of the combined company, and WildHorse shareholders will own approximately 45%, depending on the consideration elected. Prior to closing, WildHorse will designate two individuals, presently expected to be Jay Graham and current WildHorse Director David Hayes to be added to Chesapeake's Board of Directors. R. Brad Martin and Doug Lawler will continue to serve as Chesapeake's Chairman of the Board of Directors and President, Chief Executive Officer and Director,

respectively.

Investment funds managed by NGP Energy Capital Management, LLC, collectively WildHorse's largest shareholder, have entered into a voting and support agreement in support of the transaction. . . .

Chesapeake expects to finance the cash portion of the WildHorse acquisition, which is expected to be between $275 million and approximately $400 million, through its revolving credit facility. The transaction, which is subject to shareholder approvals from both companies and customary closing conditions and regulatory approvals, is expected to close in the first half of 2019.

***The Prospectus Omits Material Information, Rendering It False and Misleading***

34.     Defendants filed the Prospectus with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for January 31, 2019.

35.     As set forth below, the Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.

36.     First, the Prospectus omits material information regarding the Company's and Chesapeake Energy's financial projections, as well as the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Tudor, Pickering, Holt & Co. ("TPH") and Morgan Stanley & Co. LLC ("Morgan Stanley") (together, the "Financial Advisors").

37.     With respect to the Company's financial projections, the Prospectus fails to disclose, for all sets of projections: (i) all line items used to calculate EBITDAX; (ii) all line items used to calculate leveraged free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

38.     With respect to Chesapeake Energy's financial projections, the Prospectus fails to disclose: (i) all line items used to calculate EBITDA; (ii) all line items used to calculate operating cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

39.     With respect to the Financial Advisors' Discounted Cash Flow Analyses, the Prospectus fails to disclose: (i) the standalone unlevered cash flows expected to be generated by each of WildHorse and Chesapeake Energy and all underlying line items; (ii) the individual inputs and assumptions underlying the unlevered discount rates ranging from 8.0% to 10.0%; (iii) the terminal values for WildHorse and Chesapeake Energy; (iv) the Financial Advisors' basis for applying EBITDAX multiples ranging from, in the case of WildHorse, 3.5x to 5.5x, and in the case of Chesapeake Energy, 5.0x to 7.0x; and (v) the net debt of WildHorse and Chesapeake Energy.

40.     With respect to the Financial Advisors' Net Asset Value Analysis, the Prospectus fails to disclose: (i) unlevered free cash flows and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates ranging from 8.0% to 10.0%; (iii) the cash flows generated by the estimated proved reserves, unproved reserves, and undeveloped hydrocarbon resources; (iv) the future estimated effects of hedging; (v) the future estimated effects of general and administrative expense and income taxes; and (vi) net debt.

41.     With respect to the Financial Advisors' Selected Transaction Analysis, the Prospectus fails to disclose the individual multiples and financial metrics for the transactions observed by the Financial Advisors in the analysis.

42.     With respect to the Financial Advisors' Accretion/Dilution Analysis, the Prospectus fails to disclose the extent to which the Proposed Transaction would be accretive to WildHorse's estimated cash flow per share for years-end 2019 through 2023.

43.     With respect to the Financial Advisors' Equity Research Analysts' Price Targets analysis, the Prospectus fails to disclose the individual price targets and sources of such price targets.

44.     With respect to the Financial Advisors' Implied Offer Premia analysis, the Prospectus fails to disclose the premiums for the transactions observed by the Financial Advisors in the analysis.

45.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

46.     Second, the Prospectus omits material information regarding potential conflicts of interest of the Company's advisors.

47.     The Prospectus states that:

TPH has previously provided services to WildHorse, The Carlyle Group L.P. ("Carlyle") (which owned approximately 24% of the WildHorse common stock on an as-converted basis as of the date of TPH's opinion), Carlyle's majority-controlled affiliates and portfolio companies (collectively, the "Carlyle Related Entities"), NGP (which owned approximately 44% of the WildHorse common stock as of the date of TPH's opinion) and NGP's majority-controlled affiliates and portfolio companies (collectively, the "NGP Related Entities") on unrelated matters for which TPH has received compensation during the two years prior to the date of TPH's opinion, including serving as an underwriter in connection with WildHorse's initial public offering in 2016. In the two years prior to the date of TPH's opinion, TPH and its affiliates received aggregate fees in connection with such services of approximately $600,000 from WildHorse and less than $2,000,000, in the aggregate, from Carlyle, the Carlyle Related Entities, NGP and the NGP Related Entities.

However, the Prospectus fails to disclose the timing and nature of such services.

48.     Similarly, the Prospectus provides:

In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley has

provided financing services for Chesapeake and has received fees in connection with such services in the range of $1 million to $5 million. In addition, in the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley has provided financial advisory and financing services to Carlyle and the Carlyle Related Entities and has received fees in connection with such services in the range of $50 million to $70 million.

However, the Prospectus fails to disclose the timing and nature of such services, as well as whether Morgan Stanley has provided past services to WildHorse or its affiliates.

49.     Additionally, the Prospectus fails to disclose the terms of the engagement agreement entered into by the Company and its additional financial advisor, Guggenheim Securities, LLC ("Guggenheim").  Among other things, the Prospectus fails to disclose the amount of compensation Guggenheim received or will receive in connection with its engagement.  The Prospectus also fails to disclose whether Guggenheim has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Guggenheim for such services.

50.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

51.     Third, the Prospectus fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

52.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

53.     The omission of the above-referenced material information renders the Prospectus false and misleading, including, *inter alia*, the following sections of the Prospectus: (i) Background

of the Merger; (ii) Recommendations of the WildHorse Board of Directors and WildHorse's Reasons for the Merger; (iii) Opinion of Tudor Pickering Holt & Co Advisors LP, WildHorse's Financial Advisor; (iv) Opinion of Morgan Stanley & Co. LLC, WildHorse's Financial Advisor; (v) Certain Chesapeake Unaudited Prospective Financial and Operating Information; and (vi) Certain WildHorse Unaudited Prospective Financial and Operating Information.

54.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and WildHorse**

55.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56.    The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  WildHorse is liable as the issuer of these statements.

57.    The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

58.    The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

59.    The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure

as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

60.     The Prospectus is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62.     Because of the false and misleading statements in the Prospectus, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Chesapeake Energy**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants and Chesapeake Energy acted as controlling persons of WildHorse within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of WildHorse and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65.     Each of the Individual Defendants and Chesapeake Energy was provided with or had unlimited access to copies of the Prospectus alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Prospectus.

67.     Chesapeake Energy also had direct supervisory control over the composition of the Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Prospectus.

68.     By virtue of the foregoing, the Individual Defendants and Chesapeake Energy violated Section 20(a) of the 1934 Act.

69.     As set forth above, the Individual Defendants and Chesapeake Energy had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  January 4, 2019

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
   Brian D. Long (#4347)
   Gina M. Serra (#5387)

**OF COUNSEL:**
   300 Delaware Avenue, Suite 1220
   Wilmington, DE 19801
**RM LAW, P.C.**
Richard A. Maniskas   Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300  Facsimile: (302) 654-7530
Berwyn, PA 19312   Email: bdl@rl-legal.com
Telephone: (484) 324-6800  Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com  *Attorneys for Plaintiff*